2007 ND 29

**Dennis HOLDEN, Plaintiff and Appellant,**

v.

**Linda HOLDEN, Defendant and Appellee.**

No. 20060212.

Supreme Court of North Dakota.

Feb. 28, 2007.

Rehearing Denied May 1, 2007.

Dennis Holden (argued), *pro se*, plaintiff and appellant.

Sherry Mills Moore (argued), Bismarck, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1]  Dennis Holden appeals from a divorce judgment, arguing the district court's division of property was inequitably divided in favor of his former wife, Linda Holden.  We affirm.

I

[¶ 2]  The parties were married in 1979. This was each party's first marriage.  The Holdens have three adult children.  In 2005, Dennis Holden sued for divorce. The district court held a trial in March 2006.  Dennis Holden's proposal at trial was to sell all of the marital assets, pay the parties' debts, and divide the remainder. Linda Holden wanted to keep the real property and personal debt, but give Dennis Holden the businesses' assets and debt

associated with them. The parties' primary assets were a parcel of 5.7 acres and two businesses operated on the land. The parties' marital home was also located on the land.

[¶ 3] Before trial, Dennis Holden moved the court for an interim order, asking the district court to allow him exclusive use of the real property. He filed an affidavit assigning values to the real property and the businesses. Linda Holden requested she be temporarily awarded sole use of the house and Dennis Holden be awarded use of the shop located on the property from which the businesses were operated. The district court temporarily awarded Linda Holden the sole use of the house and awarded Dennis Holden the sole use of the shop. Linda Holden was ordered to pay the debts associated with the real property, while Dennis Holden was ordered to provide monthly accountings of the income and expenses of the businesses.

[¶ 4] Both parties filed several pretrial motions and discovery requests. Dennis Holden refused to answer Linda Holden's discovery requests. Linda Holden moved the district court to compel discovery, which was granted. Dennis Holden then moved to modify the interim order, asking the court for sole use of the real property. The district court denied the motion. Dennis Holden moved the court for a continuance so an appraisal could be done on the parties' personal property. The court granted the continuance so a third party could appraise the parties' assets. Dennis Holden's appraisal was not completed in a timely manner and was not presented to the district court. Linda Holden had Wayne Bachmeier, who works as an apprentice appraiser for a general appraisal firm, appraise the value of the real and personal property. Bachmeier's appraisal was reviewed by two certified general appraisers in the firm.

[¶ 5] Linda Holden completed a N.D.R.Ct. 8.3 property and debt listing in accordance with the scheduling order. Dennis Holden completed a partial listing two days before trial. In dividing the parties' assets, the court awarded the parties' real property to Linda Holden, subject to all debts on the property. The district court awarded Dennis Holden net marital assets worth $79,145, plus one-half of whatever is recovered from the bankruptcy attorney, and awarded Linda Holden net marital assets worth $176,470, plus one-half of whatever is recovered from the bankruptcy attorney. The court ordered Linda Holden to pay Dennis Holden $43,000. The district court acknowledged the awards were not equal, but explained the slight difference in favor of Linda Holden. The court stated the award was equitable because of $3,000 in legal fees incurred by Linda Holden in pursuing her discovery claims, $706 for property tax due on the property from the previous year, and the appraisal costs. The court also concluded the property division was equitable due to Dennis Holden's failure to cooperate in discovery and preparation for trial.

## II

[¶ 6] On appeal, Dennis Holden raises numerous issues for our review. He argues the district court erred by not having adequate information to apply the *Ruff–Fischer* guidelines and the property award was erroneous because there were no certified appraisals done on the property. Specifically, Dennis Holden claims "the district court, because there were no certified appraisals, erred in not having adequate information to apply *Ruff–Fischer* guidelines, and by awarding the commercial property as well as the residence to Linda Holden, and thereby destroying two (2) businesses and causing the removal of

corporate bankruptcy attorney...." Dennis Holden claims:

(1) The court erred in awarding all real property, including home, land, and commercial business location, to Linda Holden.

(2) The court erred in awarding to Linda Holden the entire Holden to Nedloh, Ltd. loan ... in the amount of $62,548.

(3) The court erred in awarding to Linda Holden one half of the funds on deposit with [the corporate bankruptcy attorney]. These are Corporate funds.

(4) The court erred in subtracting $1500 from Dennis Holden's column.

(5) The court erred in accepting a noncertified appraiser's input for real property values.

(6) The court erred in awarding "Cowboy Action Adventures" to Dennis Holden. The proper business names are Nedloh, Ltd., Brass Plus and Quickstar. The court awarded Dennis Holden a business that he never owned.

(7) The court erred in ordering corporate funds to be awarded to Linda Holden, which will incur tax liabilities for the businesses of Nedloh, Ltd. and Brass Plus.

(8) The court erred in causing all corporate taxes and debts to remain the liability of Nedloh, Ltd. and Brass Plus, i.e. Dennis Holden.

(9) The court erred in causing Dennis Holden's personal tax documents to become inaccessible.

(10) The court erred in causing Dennis Holden's personal liabilities to become unidentified.

(11) The court erred in causing Dennis Holden's personal assets to be undeclared.

(12) The court erred in causing personal and corporate identity issues to remain unresolved.

Linda Holden argues the court's judgment was proper, and the court properly relied on admissible evidence concerning the valuation of the real and personal property.

[¶ 7] Many of Dennis Holden's arguments are frivolous, mistaken, duplicitous, or indecipherable. Dennis Holden does not support his issues with an adequate legal argument. He also failed to raise many of his issues to the district court. We have repeatedly stated we are not ferrets and we "will not consider an argument that is not adequately articulated, supported, and briefed." *See, e.g., State v. Haibeck,* 2006 ND 100, ¶ 9, 714 N.W.2d 52; *see also Riemers v. City of Grand Forks,* 2006 ND 224, ¶ 9, 723 N.W.2d 518 (declining to consider an issue raised for the first time on appeal); *Riemers v. Grand Forks Herald,* 2004 ND 192, ¶ 11, 688 N.W.2d 167 (" '[A] party waives an issue by not providing supporting argument and, without supportive reasoning or citations to relevant authorities, an argument is without merit.' ") (quoting *Riemers v. O'Halloran,* 2004 ND 79, ¶ 6, 678 N.W.2d 547). " 'When the record does not allow for intelligent and meaningful review of an alleged error, the appellant has not carried the burden of demonstrating reversible error.' " *Linrud v. Linrud,* 552 N.W.2d 342, 345 (N.D.1996) (quoting *Olson v. Griggs County,* 491 N.W.2d 725, 732 (N.D.1992)). Therefore, we limit our review to the issues Dennis Holden properly advanced for our review: whether the district court erred in equitably dividing the marital property, and whether the district court was required to liquidate the marital estate to establish the value of the property.

III

[¶ 8] Dennis Holden claims the district court erred by not equitably distributing the marital property. We conclude the

distribution fashioned by the district court was not clearly erroneous and as such, his claim fails.

[¶ 9] A district court's property valuation is a finding of fact, subject to the clearly erroneous standard of review. *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 8, 714 N.W.2d 845; *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 12, 673 N.W.2d 601. " 'A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made.' " *Donlin v. Donlin*, 2007 ND 5, ¶ 10, 725 N.W.2d 905 (quoting *Kautzman v. Kautzman*, 1998 ND 192, ¶ 8, 585 N.W.2d 561). "The value a trial court places on marital property depends on the evidence presented by the parties." *Kostelecky*, at ¶ 8; *see also Fox v. Fox*, 2001 ND 88, ¶ 22, 626 N.W.2d 660. A district court is in a far better position than an appellate court "to observe demeanor and credibility of witnesses. . . ." *Kostelecky*, at ¶ 8. " 'A choice between two permissible views of the evidence is not clearly erroneous if the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations.' " *Id.* (quoting *Hoverson v. Hoverson*, 2001 ND 124, ¶ 13, 629 N.W.2d 573). A court's valuation is not clearly erroneous if it is within the range of the evidence presented. *Id.* at ¶ 9; *see also Amsbaugh*, at ¶ 12. Therefore, we "presume a trial court's property valuations are correct" and we will not reverse the court's valuations and division of marital property unless they are clearly erroneous. *Kostelecky*, at ¶ 8.

[¶ 10] "Under N.D.C.C. § 14–05–24(1), the district court must make an equitable distribution of the property of the divorcing parties." *Ulsaker v. White*, 2006 ND 133, ¶ 10, 717 N.W.2d 567. All of the parties' assets must be considered by the district court to insure the property division is equitable. *Donlin*, 2007 ND 5, ¶ 11, 725 N.W.2d 905. We have said:

> Under the *Ruff–Fischer* guidelines, the court must consider:
>
> > the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.
>
> [*Kostelecky*, 2006 ND 120, ¶ 12, 714 N.W.2d 845]. " '[A] property division need not be equal to be equitable, but a substantial disparity must be explained.' " *Amsbaugh*, 2004 ND 11, ¶ 23, 673 N.W.2d 601 (quoting *Bladow v. Bladow*, 2003 ND 123, ¶ 5, 665 N.W.2d 724). This Court has also recognized that a long-term marriage supports an equal distribution of property. *Dvorak [v. Dvorak]*, 2006 ND 171, ¶ 34, 719 N.W.2d 362; *Schoenwald v. Schoenwald*, 1999 ND 93, ¶ 23, 593 N.W.2d 350.

*Donlin*, 2007 ND 5, ¶ 11, 725 N.W.2d 905. North Dakota law does not mandate a set formula or method to determine how marital property is to be divided; rather, the division is based on the particular circumstances of each case. *Ulsaker*, 2006 ND 133, ¶ 14, 717 N.W.2d 567.

[¶ 11] Using the evidence presented at trial, the appraisal completed by Wayne Bachmeier at Linda Holden's behest, and the pretrial N.D.R.Ct. 8.3 property and debt listings, the court determined the parties' net worth was $255,615 and pro-

ceeded to equitably divide the property. The court awarded Dennis Holden $79,145 and Linda Holden $176,470 in property. This left a difference of $97,325. Half of the difference is $48,662.50. The court considered that Linda Holden had incurred $3,000 in legal fees because of Dennis Holden's noncompliance with discovery and had incurred the appraisal costs. The court concluded Linda Holden must pay Dennis Holden $43,000 to make the property division equitable. Thus, Dennis Holden received a total of $122,145 of the $255,615 marital estate (47.778%), and Linda Holden received $133,470 of the $255,615 marital estate (52.215%). The court also acknowledged and explained the minor difference in the property awards when it concluded:

> This is not an exactly equal amount, as the Court is going to allow Linda a credit for $3000 in attorneys fees which were incurred because of Dennis' failure to cooperate with the discovery and preparation of inventory and valuations before trial, and 1/2 of the real estate taxes that are currently owing and the costs of the appraisals, and for Dennis' obstinance in cooperating for trial.

[¶ 12] Dennis Holden complains the district court incorrectly valued the property by accepting Bachmeier's appraisal of the property. The district court properly relied upon Bachmeier's appraisal. *See Kostelecky*, 2006 ND 120, ¶ 9, 714 N.W.2d 845; *Amsbaugh*, 2004 ND 11, ¶ 12, 673 N.W.2d 601. Bachmeier is a real estate appraiser and a real estate broker. Bachmeier has passed the "Professionalism in Appraisal Practice Exam" for appraisers and works in an apprenticeship under the guidance of a certified general appraiser. The record shows Bachmeier completed his report and had two certified general appraisers review it. The record clearly indicates Bachmeier had specialized knowledge about real estate values and was qualified to give his opinion as to the value of the property. Furthermore, Dennis Holden failed to object to the introduction of Bachmeier's appraisal report at trial and failed to present contrary evidence on the property valuation. When a party fails to object to the introduction of evidence, the error is essentially waived. *Davis v. Killu*, 2006 ND 32, ¶ 20, 710 N.W.2d 118. The court was entitled to rely on the appraisal to value the property, especially considering Dennis Holden presented no evidence on property valuation.

[¶ 13] Dennis Holden also claims the court erred in awarding specific property to Linda Holden. He argues the *Ruff–Fischer* guidelines were misapplied because the parties' net worth was incorrectly determined by Bachmeier before the guidelines were applied. Dennis Holden did not challenge the application of the guidelines, only the values placed on the property before applying the *Ruff–Fischer* guidelines to divide the property. The district court properly applied the guidelines, resulting in a roughly equal distribution of the marital property. The award is consistent with our recognition that long-term marriages support nearly equal distribution of property. *Donlin*, 2007 ND 5, ¶ 11, 725 N.W.2d 905. Furthermore, the court carefully explained why the award was not exactly equal. The district court's property distribution was not clearly erroneous.

## IV

[¶ 14] Dennis Holden also argues the marital property should be liquidated to establish its fair market value. Contrary to his position, property, especially business property, need not be liquidated for a distribution to be equitable. *See Kostelecky*, 2006 ND 120, ¶ 13, 714 N.W.2d 845; *see also Gibbon v. Gibbon*,

**318**

1997 ND 210, ¶ 7, 569 N.W.2d 707 (compiling cases). "Our decisions effectively recognize liquidation of an ongoing ... business is ordinarily a last resort, and ... on appeal we generally have not been asked by the party awarded the [business] operation to liquidate it instead of structuring a monetary award so the enterprise can continue as a viable business." *Gibbon,* at ¶ 7. In this case, the court distributed the property equitably without liquidating any of the marital property, including the businesses. When the district court is presented with different methods of distribution, it is not clearly erroneous to follow one method rather than the other. *Id.* at ¶ 9.

[¶ 15] The district court's decision is supported by the evidence. Therefore, it is not clearly erroneous.

V

[¶ 16] The district court properly relied upon evidence before it to assign values to the property and divided the property in a roughly equal fashion. The court carefully explained the difference in the award values. Dennis Holden failed to show the district court's decision was clearly erroneous. We affirm.

[¶ 17] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.