20230345
FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
05-02-2024
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 77

Scott Roy Musland,                                              Plaintiff and Appellee

v.

Traci Jean Musland,                                          Defendant and Appellant

### No. 20230345

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Reid A. Brady, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

Opinion of the Court by Jensen, Chief Justice.

Michael L. Gjesdahl, Fargo, ND, for plaintiff and appellee.

Jerilynn B. Adams, Fargo, ND, for defendant and appellant.

# Musland v. Musland
## No. 20230345

**Jensen, Chief Justice.**

[¶1]   Traci Musland appeals from a judgment entered following a bench trial in a divorce action initiated by Scott Musland, arguing the district court's property division is clearly erroneous, that the court erred in setting a land rent value, and failing to award her rent for the 2023 tax year, and that the right of first refusal granted to Scott Musland is not appropriate. We affirm in part, reverse in part, and remand with instructions that the court modify the judgment with respect to the right of first refusal.

I

[¶2]   Scott and Traci Musland were married in 1997 and resided in Edgeley, North Dakota, until their separation in 2022. Scott Musland filed for divorce in May 2022. The parties resolved several interim issues through mediation, including Scott Musland having exclusive use of the marital home and Traci Musland having exclusive use of the lake home.

[¶3]   A two-day bench trial was held in July 2023. Scott and Traci Musland provided testimony and exhibits, and the district court received testimony from their daughter, a forensic accountant, and a banker. Traci Musland is currently employed and earned an adjusted gross income of $60,946 in 2022. Scott Musland is a self-employed farmer and earned an adjusted gross income of $218,661 in 2022.

[¶4]   The district court found the Musland marital estate was valued at just over eight million dollars. In its division, the court awarded Traci Musland sections of land, a lake home, all of the couple's retirement funds, miscellaneous equipment, and personal property. The court also ordered both parties to continue to split the proceeds from a gravel pit and wind towers. Traci Musland also received an "equity payment" of $700,000 and was allocated responsibility for the debt associated with her credit cards and appraisal fee, leaving her a net estate of $3,224,357. Scott Musland was

1

awarded a net estate of $4,961,915, which included the marital home, farmland, and debt, totaling $2,388,931.

## II

[¶5] Traci Musland asserts the district court's unequal distribution of the marital estate is not equitable. This Court reviews a district court's distribution of marital property as a finding of fact under a clearly erroneous standard:

> A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. We view the evidence in the light most favorable to the findings, and the district court's factual findings are presumptively correct. Valuations of marital property within the range of the evidence presented are not clearly erroneous. A choice between two permissible views of the evidence is not clearly erroneous if the district court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations.

*Kitzan v. Kitzan*, 2023 ND 23, ¶ 6, 985 N.W.2d 717 (cleaned up).

[¶6] In a divorce action, the district court "shall make an equitable distribution of the property and debts of the parties." N.D.C.C. § 14-05-24(1). Cases involving a long-term marriage generally support an equal property distribution. *Swanson v. Swanson*, 2019 ND 25, ¶ 9, 921 N.W.2d 666. Our law does not mandate a set formula or method to determine this division. *Id.* Instead, the division is based on the particular circumstances of each case. *Id.*

[¶7] "The [district] court must include all of the parties' assets and debts in the marital estate and then consider the *Ruff-Fischer* guidelines to determine an equitable distribution." *Willprecht v. Willprecht*, 2020 ND 77, ¶ 19, 941 N.W.2d 556. The *Ruff-Fischer* factors include the following:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of

2

each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.* (citing *Lee v. Lee,* 2019 ND 142, ¶ 12, 927 N.W.2d 104).

[¶8] "The [district] court is not required to make specific findings for each factor, but it must specify a rationale for its decision." *Willprecht*, 2020 ND 77, ¶ 19. The distribution does not need to be equal to be equitable, but a substantial disparity must be explained. *Berg v. Berg*, 2018 ND 79, ¶ 7, 908 N.W.2d 705. This Court has recognized on numerous occasions "the importance of preserving the viability of a business operation like a family farm, and liquidation of an ongoing farming operation or business is ordinarily a last resort." *Rebel v. Rebel*, 2016 ND 144, ¶ 11, 882 N.W.2d 256 (cleaned up).

[¶9] Traci Musland asserts the district court ignored factors supporting a more equal distribution of the marital estate to keep the farm intact. As a result, Scott Musland was awarded a substantially larger portion of the estate, 61% versus her 39%.

[¶10] A review of the district court's findings reveals a thorough analysis of the *Ruff-Fischer* factors. The court found the marital estate to be valued at just over eight million dollars. The court awarded Traci Musland sections of land, a lake home, all of the couple's retirement funds, miscellaneous equipment, and personal property. The court also ordered both parties to continue to split the proceeds from a gravel pit and wind towers. Additionally, Traci Musland received an equity payment of $700,000 while only being allocated the debt associated with her credit cards and appraisal fee, leaving her a net estate of $3,224,357. Scott Musland was awarded a net estate of $4,961,915, which included all of the farm's debt, totaling $2,388,931.

[¶11] In explaining this disparity in the division of the marital estate, the district court noted the following:

3

While the distribution to Scott is larger than to Traci, it leaves him far less in liquid cash and no retirement assets. Instead, he assumes the risk and liability of approximately $2.4M in debts, which the assets he's awarded largely collateralize. The assets awarded to Scott are illiquid and, to be transformed to cash, would be subject to substantial tax liabilities and costs of sale. Their value to Scott is in the income they provide, the lifestyle they afford, and the satisfaction and pride they allow him in assuring they pass to the next generation. The disparate distribution is based on preserving the farm and cattle operation, avoiding the potential financial harm to Scott—a lifelong farmer, maximizing the offset to Traci by using SMCC's cash flow capacity, and distributing to Traci an award ($3.22 million) that exceeds her projected award ($3.16 million) that would result from liquidation.

[¶12] The district court provided a thorough analysis of the *Ruff-Fisher* guidelines and applied the law properly. There is evidence in the record to support the court's findings, and we are not left with a definite and firm conviction that a mistake has been made. We conclude the division of the marital estate was not clearly erroneous.

[¶13] Traci Musland also contends the district court misapplied the law by using Scott Musland's premarital net worth to rationalize the disparity in its division of the marital estate, citing our decision in *Fisher v. Fisher*, 139 N.W.2d 845 (N.D. 1996). She appears to contend the court's recognition of premarital ownership of assets impermissibly excluded assets from the marital estate. The court found Scott Musland came into the marriage with a net worth of $183,781. However, this finding was not used by the court to exclude assets from the marital estate but was considered as part of the court's *Ruff-Fischer* analysis, which includes "[the parties] financial circumstances as shown by the property owned . . . whether accumulated before or after the marriage[.]" *Willprecht*, 2020 ND 77, ¶ 19 (quoting *Lee*, 2019 ND 142, ¶ 12). We conclude the court's consideration of Scott Musland's premarital net worth was not an erroneous application of the law.

[¶14] Traci Musland argues the district court erred in awarding her personal property and farm equipment she did not want and failed to award the

personal property she requested. Traci Musland contends she has no use for farming equipment or machinery and cannot sell such equipment. The court considered Traci Musland's concerns, indicating that the particular property was being awarded to provide a more equitable result and also indicating "[Traci Musland] is bright, resourceful, and business-savvy." The court also included a directive within the judgment that "Scott will be required to prepare such items for sale and transport them to a sale or auction site," potentially eliminating one hurdle posed by the award of equipment.

[¶15] Traci Musland fails to provide any legal authority to support her argument as to how the district court erred in its asset allocation. The court is tasked with making an equitable distribution of personal assets at the dissolution of a marriage. While Traci Musland may not be satisfied with the manner in which the assets were allocated by the court, she has the burden of demonstrating that the division of the marital estate was clearly erroneous. Because there is evidence in the record supporting the allocation, the court did not misapply the law, and we are not left with a definite and firm conviction a mistake has been made, the allocation is not clearly erroneous.

III

[¶16] Traci Musland argues the district court erred in granting a right of first refusal to Scott Musland. The language of the right of first refusal is as follows:

> Scott shall have the first right of refusal to purchase any of the real estate awarded to Traci should either Traci or her estate attempt to sell such land during Scott's lifetime. Upon receipt of any offer to purchase such land, Traci shall provide Scott written notice of such offer and the purchase money offer itself. Scott shall have 14 days thereafter within which to exercise his right to purchase the land under identical terms. If he does not exercise his right within such time it shall be deemed waived. The sale to Scott shall be closed within 120 days of the date he exercises his right to purchase.

[¶17] Traci Musland contends the language of the right of first refusal would require her to accept or allow the exercise of the right of first refusal as a response to "any" offer made to purchase the property, including offers below

5

the fair market value and offers she determines to be unacceptable. We conclude the language of the right of first refusal as written is not appropriate and remand that issue to the district court to modify the right of first refusal to provide that it is triggered by the acceptance of an offer by Traci Musland, subject to the right of first refusal.

IV

[¶18] Traci Musland contends the district court erred by failing to consider the potential tax implications embedded within the property division. Potential taxation matters are part of the realistic effects of a marital property division that a court should consider when properly informed. *Rebel*, 2016 ND 144, ¶ 14. This Court has stated:

> [A] trial court in a divorce action should consider potential taxes in valuing marital assets only if (1) the recognition of a tax liability is required by the dissolution or will occur within a short time; (2) the court need not speculate about a party's future dealing with the asset; (3) the court need not speculate about the possible future tax consequences; and (4) the tax liability can be reasonably predicted.

*Id.* (quoting *Linrud v. Linrud*, 1998 ND 55, ¶ 15, 574 N.W.2d 875).

[¶19] Traci Musland asserts the district court, while analyzing the tax consequences of a liquidation sale of the farm, failed to analyze the consequences she would face if she chose to sell the assets she was awarded in the divorce. Scott Musland asserts Traci Musland does not need to sell the equipment or lake house.

[¶20] A forensic accountant provided detailed testimony about the tax liability that would arise in the event of liquidation. He clarified on cross-examination that these tax liabilities would follow the assets, and if a party had to sell assets, someone would have to pay those tax obligations. However, Traci Musland has failed to indicate what this tax liability will be, nor was the quantification of a specific liability ever presented to the district court.

6

[¶21] Additionally, as this Court has held, the tax consequences must either be required by the property distribution or must be certain to occur within a short time afterward. Traci Musland provided no testimony at trial she intends to sell the equipment nor does the record support a conclusion Traci Musland will be compelled to immediately sell the property. Her testimony was limited to the sale of the lake home, and with the comment if she were provided a cash settlement, she would be able to buy a home; she received a $700,000 "equity payment." We conclude that under the circumstances presented in this case, the district court did not err with respect to the consideration of future tax consequences.

V

[¶22] Traci Musland asserts the district court erred in determining the rent Scott Musland is required to pay to her for future use of property allocated to her. This Court has previously noted:

> A trial court's valuation of property is a finding of fact that is presumptively correct and subject to the clearly erroneous standard of review. The value given to marital property by the courts depends on the evidence presented by the parties. Marital property valuations within the range of the evidence are not clearly erroneous.

*Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 12, 673 N.W.2d 601 (cleaned up).

[¶23] Traci Musland's contention is twofold. First, that the district court erred in forcing her to rent her land to Scott Musland at a reduced rate starting in 2024. Second, that by delaying the start date until 2024, she was improperly deprived of compensation for 2023.

[¶24] The district court ordered Scott Musland to pay a fair rental value, as indicated by the most recently published five-year average starting with the 2024 season. The court received testimony and exhibits illustrating the different rental rates for the land. Scott Musland testified he preferred the five-year average to allow for a more balanced average in rental rates. Traci Musland provided no commentary on her preference for the rental rates during

the trial. The court was provided evidence supporting the finding on the fair rental value for future years, the court did not misapply the law, and we are not left with a definite and firm conviction the finding is erroneous. We conclude the finding is not clearly erroneous.

[¶25] With regard to the 2023 farm year, a judgment of divorce was not entered until September 13, 2023. The marital estate remained intact until the entry of the judgment. While the parties voluntarily agreed to use some items within the marital estate during the interim and could have sought district court intervention for an interim order, the property remained available for use by either party, subject to the restrictions provided in N.D.R.Ct. 8.4. Traci Musland did not argue at trial for the accrual of rent during the interim period with regard to property to be allocated to her in the property division. Under the circumstances presented in the case, we conclude the court did not err by not requiring the accrual of rent on the use of marital property by either party during the pendency of the proceedings.

VI

[¶26] The district court's distribution of marital property and determination of fair rental value was not clearly erroneous. The court did not err by not specifically addressing the potential tax consequences Traci Musland would face if she chooses to sell the land, equipment, or lake house awarded to her; did not err in the valuation placed on future rental payments; and did not err in not awarding rental payments during the pendency of the proceedings. We affirm the court's distribution of the marital estate, but remand with instructions that the court modify the right of first refusal to provide that it is triggered by the acceptance of an offer by Traci Musland, subject to the right of first refusal.

[¶27] Jon J. Jensen, C.J.
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte
     Douglas A. Bahr